# SUPPORTING DOCUMENTS

# NOTE

OCTOBER 24, 2008                     MT LAUREL                          NEW JERSEY
[Date]                                      [City]                               [State]

210 ENGLISH PLACE, TOWNSHIP OF BERNARDS, NEW JERSEY 07920
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means ATLANTIC PACIFIC MORTGAGE CORPORATION, A NEW JERSEY
CORPORATION                                                         and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
TWO HUNDRED FIFTY-EIGHT THOUSAND FIVE HUNDRED FORTY-SIX AND
00/100                                    Dollars (U.S. $ 258,546.00           ),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of SIX AND 750/1000                            percent
(      6.750 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st  day of each month beginning
on DECEMBER 1, 2008         . Any principal and interest remaining on the 1st    day of
NOVEMBER, 2038          , will be due on that date, which is called the "maturity date."

**(B) Place**

Payment shall be made at 302 FELLOWSHIP ROAD, STE 110, MT LAUREL, NEW
JERSEY 08054
, or at such place
as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,676.92            .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

Borrower Initials: _DD_   _W_   _____   _____   _____   _____

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/08                          Page 1 of 3                          DocMagic eForms 800-649-1362
www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000      percent (    4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Borrower Initials: _DD_ _W_ _____ _____ _____ _____

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/08      Page 2 of 3      DocMagic eForms 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
DAVID G DELAPLAIN          -Borrower

_____ (Seal)
LAURA LEE DELAPLAIN        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*

DocMagic eForms 800-649-1362
www.docmagic.com

# ALLONGE TO MORTGAGE NOTE

David G Delaplain
Laura Lee Delaplain,
210 English Place
Township of Bernards, NJ 07920

Original Note Amount: 258,546.00

Term in Months: 360

Closing Date: 10/24/2008

Pay to the order of  Countrywide Bank, FSB/
Without Recourse

Michael W. Koehl
President
Atlantic Pacific Mortgage Corporation
A New Jersey Corporation

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY: *Nereida G. Diaz*
NEREIDA G DIAZ
ASSISTANT VICE PRESIDENT

PAY TO THE ORDER OF
BANK OF AMERICA, NA
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____ *Laurie Meder*
LAURIE MEDER
SENIOR VICE PRESIDENT

After Recording Return To:
CHANCELLOR TITLE AGENCY
353 RTE 46 WEST SECOND FLOOR
FAIRFIELD, NEW JERSEY 07004



This Instrument Prepared By:
KELLY LEVY, ALTANTIC PACIFIC
MORTGAGE CORP. 302 FELLOWSHIP RD,
STE 110, MT LAUREL, NJ 08054



———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  OCTOBER 24, 2008
The mortgagor is  DAVID G DELAPLAIN AND LAURA LEE DELAPLAIN, HUSBAND
AND WIFE

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee.  MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  ATLANTIC PACIFIC MORTGAGE CORPORATION, A
NEW JERSEY CORPORATION                                                               ("Lender")
is organized and existing under the laws of  NEW JERSEY                                                    ,
and has a principal office and mailing address of  302 FELLOWSHIP ROAD, STE 110, MT
LAUREL, NEW JERSEY 08054
Borrower owes Lender the principal sum of  TWO HUNDRED FIFTY-EIGHT THOUSAND FIVE
HUNDRED FORTY-SIX AND 00/100          Dollars (U.S. $ 258,546.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  NOVEMBER 1, 2038  .
This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law.  The maximum principal amount secured by this Security Instrument is $ 258,546.00          . For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in  SOMERSET                                                  County, New Jersey:

Borrower Initials: _DD_  _LD_    _____  _____  _____  _____  _____

DocMagic eForms 800-649-1362
www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: B9202/L31.07

which has the address of                210 ENGLISH PLACE
                                       [Street]

TOWNSHIP OF BERNARDS      , New Jersey     07920       ("Property Address"):
         [City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

    2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Borrower Initials: _____   _____   _____   _____   _____   _____   _____

DocMagic *eForms* 800-649-1362
www.docmagic.com

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>FIRST</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>SECOND</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>THIRD</u>, to interest due under the Note;

<u>FOURTH</u>, to amortization of the principal of the Note; and

<u>FIFTH</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

Borrower Initials: _____ _____ _____ _____ _____

FHA NEW JERSEY MORTGAGE - MERS
6/96                                    Page 3 of 8                    DocMagic *eForms* 800-649-1362
                                                                       www.docmagic.com

**(d)  Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within      60 DAYS
from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to      60 DAYS                                  from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Borrower Initials:  _D_J_   _LD_   _____   _____   _____   _____

FHA NEW JERSEY MORTGAGE - MERS
6/96                                              Page 5 of 8                    DocMagic *eForms* 800-649-1362
                                                                                 www.docmagic.com

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agrees as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**If the Lender's interest in this Security Instrument is held by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentences shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Borrower Initials: DD   LD

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| [X] Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
DAVID G DELAPLAIN              -Borrower

_____ -(Seal)
LAURA LEE DELAPLAIN              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Signed, sealed and delivered in the presence of:

_____            _____

DocMagic eForms 800-649-1362
www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of New Jersey,

County of _SOMERSET_____ , ss

    I CERTIFY that on _October 24ᵗʰ 2008_, DAVID G DELAPLAIN AND LAURA

LEE DELAPLAIN _____

_____

_____ ,

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument; and
(b) executed this instrument as his or her own act.

                                                        10.24.08

                       Notary's Signature                        Date

                       **DAVID K. GRANHOLM**
                     **NOTARY PUBLIC OF NEW JERSEY**
                     **Commission Expires 8/4/2009**

                       _____

                       Notary's printed or typed name

                       My commission expires: _____

               **DocMagic** *eForms* 800-649-1362
                                                       www.docmagic.com

## STEWART TITLE GUARANTY COMPANY

File Number: CTA-10501

### SCHEDULE A
### LEGAL DESCRIPTION

Unit B in Building 31 in Society Hill at Bernards I Condominium together with an undivided 0.00294 percentage interest in the Common Elements appurtenant thereto as amended from time to time, in accordance with and subject to the terms, limitations, conditions, covenants, restrictions and other provisions of Society Hill at Bernards I Condominium Master Deed dated January 6, 1986 recorded January 10, 1986 in the Office of the Clerk of Somerset County in Deed Book 1566, page 429 et seq., First Amendment to Master Deed and Declaration of Restrictions and Protective Covenants for Society Hill at Bernards I Condominium dated March 12, 1986 and recorded March 17, 1986 in Deed book 1574, page 743 in the Somerset County Clerk's Office and Second Amendment to Master Deed and Declaration of Restrictive and Protective Covenants for Society Hill at Bernards I Condominium dated June 24, 1986, recorded July 3, 1986 in Deed Book 1587, page 186 and any subsequent amendments thereto.

NOTE: Being Lot(s)  Lot: 31.07, Block: 9202;  Tax Map of the Township of Bernards, County of Somerset, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

# FHA CONDOMINIUM RIDER

**THIS CONDOMINIUM RIDER** is made this    24th    day of  OCTOBER            ,
2008       , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to    ATLANTIC PACIFIC MORTGAGE
CORPORATION, A NEW JERSEY CORPORATION

("Lender") of the same date and covering the Property described in the Security Instrument  and
located at:
    210 ENGLISH PLACE, TOWNSHIP OF BERNARDS, NEW JERSEY 07920

[Property Address]

The Property Address includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

SOCIETY HILL

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium
Project ("Owners Association") holds title to the property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    So long as the Owners Association maintains, with a generally accepted insurance
      carrier, a "master" or "blanket" policy insuring all property subject to the
      condominium documents, including all improvements now existing or hereafter
      erected on the Property, and such policy is satisfactory to Lender and provides
      insurance coverage in the amounts, for the periods, and against the hazards Lender
      requires, including fire and other hazards included within the term "extended
      coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender
      waives the provision in Paragraph 2 of this Security Instrument for the monthly
      payment to Lender of one-twelfth of the yearly premium installments for hazard
      insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this
      Security Instrument to maintain hazard insurance coverage on the Property is
      deemed satisfied to the extent that the required coverage is provided by the Owners'
      Association policy.  Borrower shall give Lender prompt notice of any lapse in

Borrower Initials:    _DD_    _US_    _____  _____  _____  _____  _____

**FHA-MULTISTATE CONDOMINIUM RIDER**

Document Systems, Inc. (800) 649-1362                              Page 1 of 2

required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.    If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.


_____(Seal)          _____(Seal)
DAVID G DELAPLAIN          Borrower          LAURA LEE DELAPLAIN          Borrower


_____(Seal)          _____(Seal)
                          Borrower                                    Borrower


_____(Seal)          _____(Seal)
                          Borrower                                    Borrower


**FHA-MULTISTATE  CONDOMINIUM  RIDER**
Document Systems, Inc. (800) 649-1362                  Page 2 of 2



BRETT A. RADI
SOMERSET COUNTY CLERK
20 GROVE STREET
P.O. BOX 3000
SOMERVILLE, NJ 08876-1262

*************************************************************************************************

| | |
|---|---|
| **Recorded:** | **11/07/2008 01:00:32 PM** |
| **Book:** | **OPR   6174 Page: 648-659** |
| **Instrument No.:** | **2008051934** |
| | **MTG    12 PGS    $130.00** |

**Recorder:    LEONARDI**

*************************************************************************************************

# DO NOT DISCARD



DELAPLAIN  DG

610  1802000

BRETT A. RADI COUNTY CLERK
SOMERSET COUNTY, NJ
2011 JUN 24 03:06:15 PM
BK:6430 PG:1377-1378
INSTRUMENT # 201102762

This space for Recorder's use

| | |
|---|---|
| Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Diana DeAvila**<br>**888-603-9011**<br>**450 E. Boundary St.**<br>**Chapin, SC 29036** | When recorded mail to:<br>**CoreLogic**<br>**450 E. Boundary St.**<br>**Attn: Release Dept.**<br>**Chapin, SC 29036** |

Property Address:

**210 English Pl**
**Basking Ridge, NJ 07920-2740**

NJ0-AM 13990591          6/13/2011

MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME   LOANS SERVICING, LP** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **ATLANTIC PACIFIC MORTGAGE CORPORATION, A NEW JERSEY CORPORATION** |
| Borrower(s): | **DAVID G DELAPLAIN AND LAURA LEE DELAPLAIN, HUSBAND AND WIFE** |
| Date of Mortgage: | **10/24/2008** |
| Original Loan Amount: | **$258,546.00** |

Recorded in **Somerset County**, NJ on: **11/7/2008**, book **OPR 6174**, page **648** and instrument number **2008051934** ✓

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

___6/14/11___

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

**Chester Levings, Assistant Secretary**

State of **California**
County of **Ventura**

On **June 14, 2011** before me, **Evette Ohanian**, Notary Public, personally appeared **Chester Levings**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.



EVETTE OHANIAN
COMM. #1787925

PREPARED BY & RETURN TO:
C. R. Hall
Carrington Mortgage Services
1600 S. Douglass Road, Suite #200-A
Anaheim, CA 92806 **Assignment of Mortgage** Send Any Notices To Assignee.
For Valuable Consideration, the undersigned, **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING LP 1800 Tapo Canyon Rd., Simi Valley , CA 93063 (Assignor)** by these presents does assign, and set over, without recourse, to **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST C 1600 South Douglass Road, Suite #200-A, Anaheim, CA 92806 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **DAVID G. DELAPLAIN AND LAURA LEE DELAPLAIN, HUSBAND AND WIFE** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR ATLANTIC PACIFIC MORTGAGE CORPORATION, A NEW JERSEY CORPORATION ITS SUCCESSORS AND ASSIGNS.   Said mortgage **Dated: 10/24/2008** is recorded in the **State of NJ, County of Somerset on 11/7/2008, as Book 6174 Page 648 Instrument # 2008051934 AMOUNT: $ 258,546.00** Property Address: 210 ENGLISH PLACE, TOWNSHIP OF BERNARDS, NJ 07920
IN WITNESS WHEREOF, the Undersigned Corporation/Trust has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on: MAY 17 2017
BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING LP
BY CARRINGTON MORTGAGE SERVICES, LLC, AS ATTORNEY-IN-FACT

By: _____

___Chris Lechtanski, AVP of Default___,

The Power of Attorney was filed in Somerset County, New Jersey on _____ in _____.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___California___
County of ___Orange___
On 5/17/2017 before me, __Wheny Wulandari__, Notary Public, personally appeared __Chris Lechtanski__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Notary public, __Wheny Wulandari__
My commission expires: __10/17/2017__

WHENY WULANDARI
Commission # 2045861
Notary Public - California
Orange County
My Comm. Expires Oct 17, 2017

NJ  Somerset                                    CMS/AOM/2017-1BANA



## CARRINGTON MORTGAGE SERVICES MFR/NOD REFERRAL SHEET

| Property Address | 210 ENGLISH PLACE TOWNSHIP OF BERNARDS NJ 07920 | Vesting | WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF, , STANWICH MORTGAGE LOAN TRUST, C |
|---|---|---|---|

| Mortgager Information | |
|---|---|
| Account # | |
| FHA Case # | |
| Mortgager | DAVID G DELAPLAIN |
| Co-Mortgager | LAURA LEE DELAPLAIN |
| Date Last Payment Received | 1/13/2020 |
| Last Payment Amount | $2,100.00 |
| Current UPB | $321,534.43 |
| Motion Type | |

| Loan Type | Non-DSI |
|---|---|

| MFR Totals | | | |
|---|---|---|---|
| Total Payments Due | $ | 8,633.68 | |
| Uncollected Interest Due | $ | - | |
| Total Fees Due | $ | 1,150.00 | PPFN |
| Total Cost Due | $ | 20.00 | 11/25/19-NSF Fee |
| Total Late Charges Due | $ | - | |
| Post Suspense Balance | | ($1,567.03) | |
| Total Due for MFR | $ | 8,236.65 | |
| Contractual Due Date | | 3/1/2016 | |
| Post-Petition Due Date | | 10/1/2019 | |

| BK Information | |
|---|---|
| BK Case # | 19-12706 |
| BK Chapter | 13 |
| BK Filing State | NJ |
| Debtor | DAVID G DELAPLAIN |
| Co-Debtor | LAURA LEE DELAPLAIN |

### Payment Due Detail

| From | To | P&I | Escrow | Total Payment Amount | # of Missed Payments | Total |
|---|---|---|---|---|---|---|
| 10/1/2019 | 1/1/2020 | $1,632.29 | $526.13 | $2,158.42 | 4 | $8,633.68 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total | $8,633.68 |

| Delinquent Taxes | | Corporate Advance Detail | | |
|---|---|---|---|---|
| Year | Amount | Expense Description | Fee Amount | Cost Amount |
| | | BPO | $ - | $ - |
| | | BK Fees & Costs | $ - | $ - |
| | | Property Inspections | $ - | $ - |
| | | NSF Fees | $ - | $ - |
| | | Corporate Advance | $ - | $ 20.00 | 11/25/19-NSF Fee |
| | | Expense Advance | $ 1,150.00 | $ - | PPFN |
| | | Escrow Shortage | $ - | $ - |
| Total | $ - | Total | $ 1,150.00 | $ 20.00 |

| | | | | | Post Suspense Balance | | -$7,125.07 | | | |

| Transaction Type | Transaction Date | Amount Received | Post-petition Due Date | Post Amt Due Per PCN | Contractual Amt Applied | Principal | Escrow | Posting Over/Short | Credit to Post Suspense |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 2/8/2019 | $0.00 | 2/1/2019 | | | | | | $0.00 |
| Post-Petition | 03/01/19 | $1,477.55 | | | | | | | $1,477.55 |
| Post-Petition | 04/03/19 | $1,478.00 | 3/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$680.42 | $0.00 |
| Post-Petition | 05/06/19 | $1,477.00 | 4/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$681.42 | $0.00 |
| Post-Petition | 06/05/19 | $1,477.00 | | | | | | | $1,477.00 |
| Post-Petition | 07/03/19 | $1,477.00 | 5/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$681.42 | $0.00 |
| Post-Petition | 08/05/19 | $1,477.00 | 6/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$681.42 | $0.00 |
| Post-Petition | 09/04/19 | $1,477.00 | | | | | | | $1,477.00 |
| Post-Petition | 11/13/19 | $2,077.00 | 7/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$81.42 | $0.00 |
| Post-Petition | 12/16/19 | $2,100.00 | 8/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$58.42 | $0.00 |
| Post-Petition | 01/13/20 | $2,100.00 | 9/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$58.42 | $0.00 |
| Post-Petition Payment Due | | | 10/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$2,158.42 | $0.00 |
| Post-Petition Payment Due | | | 11/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$2,158.42 | $0.00 |
| Post-Petition Payment Due | | | 12/1/2019 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$2,158.42 | $0.00 |
| Post-Petition Payment Due | | | 1/1/2020 | $2,158.42 | $2,158.42 | $1,632.29 | $526.13 | -$2,158.42 | $0.00 |

| Debit from Post Suspense | Post Suspense Balance |
|---|---|
| $0.00 | $0.00 |
| $0.00 | $1,477.55 |
| $680.42 | $797.13 |
| $681.42 | $115.71 |
| $0.00 | $1,592.71 |
| $681.42 | $911.29 |
| $681.42 | $229.87 |
| $0.00 | $1,706.87 |
| $81.42 | $1,625.45 |
| $58.42 | $1,567.03 |
| $58.42 | $1,508.61 |
| $2,158.42 | -$649.81 |
| $2,158.42 | -$2,808.23 |
| $2,158.42 | -$4,966.65 |
| $2,158.42 | -$7,125.07 |